WATKINS et al, Respondents, v. BOWYER, Appellant.

(173 N. W. 745).

(File No. 4536.   Opinion filed August 15, 1919).

1. Sale—Stolen Cattle, Conspiracy to Defraud Vendee—Deceit, Allegation of Conspiracy, Immateriality Of.

In a suit for damages for conspiracy in sale of stolen cattle to plaintiff, the evidence showing that defendant B, knowing the cattle were stolen, purchased them from K, who re-purchased part of them and sold them to plaintiff, that when one of plaintiffs inquired of B as to K's title to the cattle and his right to sell them, he was informed by B that he had purchased the cattle from one H and had a bill of sale from him, that the cattle were "absolutely all right," and recommended that plaintiffs buy them; K having testified that B first suggested selling them to plaintiffs, held, that the allegation of conspiracy was immaterial and should be treated as surplusage; that the gravamen of the case was the fraud and deceit so practiced; that if B knowingly aided and assisted K in perpertrating the fraud, he is equally liable with K.

2. Same—Inducing Sale by False Representations, Non-receipt of Proceeds, Whether Necessary to Recovery.

Where through false representations a sale of personalty is effected, it is immaterial to recovery that he who deceived received none of the proceeds of the illegal transaction nor was benefited thereby; it being sufficient to show intention to induce the person defrauded and who relied upon it to do or refrain from doing something he would not otherwise have done, to his pecuniary injury, after acting with reasonable prudence.

3. Evidence—Impeachment of Party—Reputation Good "So Far as She Knew," Refused Instruction Assuming Reputation Proven, Propriety.

Where, for purposes of impeaching a party defendant a wit-

ness had testified that, "so far as she knew" his reputation was good, **held**, that trial court properly refused an instruction to the effect that plaintiffs thereby made witness their own and that defendant's good reputation had been proven; such instruction implying that jury must accept said testimony as true.

4. **Trials—Non-resident Juror,—Knowledge of Non-residence, Acceptance of Juror With, Waiver By.**

That a juror, otherwise qualified, was a non-resident of the county of the trial, and served upon the jury, is not ground for new trial; such disqualification having been waived by appellant after previous knowledge of his non-residence.

Appeal from Circuit Court, Fall River County. Hon. Levi McGee, Judge.

Action by William Watkins and another, against James T. Bowyer, to recover damages for sale by defendants to plaintiffs of stolen cattle. From a judgment for plaintiffs, and from an order denying a new trial, defendant Bowyer appeals. Affirmed.

*Martin & Mason,* and *Thomas E. Eastman,* for Appellant.

*Wilson & Wilson,* for Respondents.

(1)   To point one of the opinion, Respondent cited:

Howland v. Corn, 114 C. C. A. 227, 232 Fed. 35; Perry v. Hayes, 215 Mass. 296, 102 N. E. 318; Green v. Davies, 182 N. Y. 499, 75 N. E. 536.

(2)   To point two, Appellant cited:

Wolfgram v. Dill 37 S. D. 282-288.

Respondent cited:

Busterud v. Farrington, 36 Minn. 320; Einstein v. Marshall, 58 Ala. 153, 29 Am. Rep. 729; Boyd v. Browne, 6 Penn. St. 310.

(3)   To point three, Respondent cited:

Schmidt v. Durnam, 50 Minn. 96.

(4)   To point four, Appellant cited:

Rice v. State, 16 Ind. 298.

Respondent cited:

24 Cyc. 316-319.

POLLEY, J.   The complaint in this action alleges that defendants entered into a conspiracy to defraud plaintiffs by selling them certain cattle which defendants knew to have been stolen. The cattle were brought into the neighborhood where plaintiffs and defendants lived by the defendant Kindred and one Hudspeth. Defendant Bowyer, knowing the cattle had been stolen,

purchased them from Kindred. Afterwards Kindred purchased a part of the cattle back from Bowyer and sold them to plaintiff. Some time thereafter the cattle were found and retaken by their rightful owners, and plaintiffs now seek to recover from defendants the purchase money, together with interest and expenses. Defendant Kindred failed to answer, and judgment was taken against him by default. Bowyer interposed an answer, which in effect amounts to a general denial. Plaintiffs had judgment, and Bowyer appeals.

It is contended by appellant that there is no evidence tending to prove a conspiracy by the defendants, and that, the property involved being personal property, respondents can look only to their immediate grantor for damages.

[1] Under the undisputed facts in the case, it is not necessary to prove the conspiracy. The conspiracy, if proven, does not constitute the gravamen of the case. It is the fraud and deceit that was practiced upon plaintiffs, to their injury, that constitutes the real cause of action. If appellant knowingly aided and assisted Kindred in perpetrating the fraud upon plaintiffs, then he is equally liable with Kindred. Green v. Davies, 182 N. Y. 499, 75 N. E. 536, 3 Ann. Cas. 310; Perry v. Hayes et al., 215 Mass. 296, 102 N. E. 318. Proof of the conspiracy might have been necessary had an attempt been made to bind one of the defendants by the declarations or conduct of the other. Brackett v. Griswold, 112 N. Y. 454, 20 N. E. 376. But no such attempt was made, and the allegations of conspiracy may be treated as mere surplusage.

[2] Nor is it material, as claimed by appellant, that he received no part of the proceeds of the illegal transaction nor was to be benefited in any manner thereby. Recovery may be had from one who makes false representations of a material fact with an intention to induce the person to whom it is made, in reliance upon it, to do or to refrain from doing something to his pecuniary injury, when such person, acting with reasonable prudence, is thereby deceived and induced to do what he otherwise would not have done. Busterud v. Farrington, 36 Minn. 320, 31 N. W. 360.

It is claimed by plaintiffs, and there is an abundance of evidence in the record to warrant a finding by the jury to that

effect, that before they made the purchase from Kindred one of the plaintiffs went to the appellant for the very purpose of learning what he could relative to Kindred's title to the cattle and his right to sell them, and that appellant told said plaintiff that he (appellant) had purchased the cattle from a man by the name of Hess, who lived near Wayside, in the state of Nebraska; that he (appellant) had a bill of sale for the cattle from said Hess and that the cattle were "absolutely all right"; that appellant recommended plaintiffs to buy the cattle and said that he believed they could make some money on them. Appellant admitted that he told the witness that he (appellant) bought the cattle from a man named Hess, who was a rancher near Wayside, Neb., and defendant Kindred testified that it was appellant who first suggested that he sell the cattle to plaintiffs. This was a sufficient representation by appellant to render him liable to plaintiffs for the injury they suffered by reason of having acted upon such representations.

[3] At the trial, plaintiffs' counsel, for the purpose of impeaching the appellant, asked a witness if she knew appellant's reputation for truth and veracity in the community in which he (appellant) lived. The witness answered that she did, and in reply to a further question she answered that, so far as she knew, such reputation was good. Upon the strength of this testimony, counsel for defendant requested the following instruction:

"The jury are instructed that the plaintiffs' counsel, during the progress of the case, asked witness Mrs. Bennet as to the general reputation of the defendant Bowyer for truth and veracity, who testified that it was good. The plaintiffs thereby made the witness their witness upon that subject; no other testimony having been offered upon that subject. The reputation of the defendant Bowyer for truth and veracity is therefore established as good, for the purposes of this case."

The court refused to give the instruction, and such refusal is assigned as error. This instruction was properly refused. The effect of the instruction, if given, would have been to tell the jury that they must accept as true all the testimony given by appellant. Whether the effect of the question and answer was to bar the plaintiffs from further attempt to impeach appellant, it is not necessary to determine. No such attempt was made, and

the jury was at liberty to believe or disbelieve appellant's testimony, according as they saw fit.

[4] One of the grounds upon which a new trial is asked is that one of the jurors who tried the case was not a resident of the county in which the case was tried, and therefore was not qualified to act as a juror in the case. It is shown, by the affidavit of the juror in question and by an affidavit by each of appellant's counsel, that such juror resided upon the Battle Mountain Sanitarium grounds, a federal reservation at Hot Springs, in Fall River county. Whether the fact that this juror resided upon a federal reservation within the county would have been a sufficient ground for excusing him from the panel, had the matter been brought to the attention of the trial court at the proper time, it is not necessary to decide. Nor is it necessary to decide the effect of appellant's failure to ascertain the place of the juror's resdence during his examination touching upon his qualifications to act as a juror in the case. It is not claimed that the juror in question did not possess all the legal qualifications of a juror, except that pertaining to residence, and this, we hold, is a disqualification that may be waived by the parties to the action if such disqualification is known before the trial. One of appellant's counsel states, in his affiavit, that he knew before the trial that said juror resided upon the federal reservation. This being true, he should have challenged the juror for cause and had him excused before the trial. A party may not try a case to a juror whom he knows to be disqualified and then, after a verdict is rendered against him, have such verdict set aside because of such disqualification.

No error appearing upon the record, the judgment and order appealed from are affirmed.